**Commonwealth *v.* Bondi, Appellant.**

Argued March 23, 1967.   Before ERVIN, P. J., JACOBS, HOFFMAN, and SPAULDING, JJ. (WRIGHT, WATKINS, and MONTGOMERY, JJ., absent).

*Daniel L. Quinlan, Jr.,* for appellant.

*Richard A. Devlin,* Assistant District Attorney, with him *Henry T. Crocker* and *George W. Tracy,* Assistant District Attorneys, and *Richard S. Lowe,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAULDING, J., September 15, 1967:

Appellant was arrested on January 28, 1966 by State Police officers and subsequently convicted on charges of setting up a lottery, being concerned in a lottery, selling lottery tickets, poolselling and bookmaking. The arrest occurred at approximately noon in the parking lot at the place of appellant's employment pursuant to an arrest warrant while, simultaneously, his car was searched pursuant to a search warrant. Both warrants were issued on the basis of "information supplied by an informant who this officer knows to be

reliable and who has furnished info. in past and also on observation on January 27, 1966." Timely motions were made by defense counsel to suppress any evidence seized as a result of either warrant. The court below granted the motion as to the search warrant[1] but denied it as to the arrest warrant because "of the vast distinction between search warrants and arrest warrants."

Two problems are presented: whether there was a valid arrest warrant and, if not, whether a valid arrest was made without a warrant.

We must determine whether the standard of indicia of probable cause on which the magistrate must make his determination as to the issuance of a warrant differs as between search and arrest warrants. In *Giordenello v. United States,* 357 U.S. 480 (1958), the Court stated that the "probable cause" requirement comes from the Federal Rules of Criminal Procedure, but "[t]he provisions of these Rules must be read in light of the constitutional requirements they implement. The language of the Fourth Amendment, that '. . . no Warrants shall issue, but upon probable cause . . .' of course applies to arrest as well as search warrants." (at 485-486).[2] The court below was cognizant of the *Giordenello* case, but felt that its effect was limited to interpretation of the Federal Rules of Criminal Procedure. *Giordenello* may not be completely clear on its face, but subsequent cases demonstrate that it was meant to encompass more than these Rules. "In Giordenello, although this Court construed the requirement of 'probable cause' contained in Rule 4 of the Federal Rules of Criminal Procedure, it did so 'in light of the constitutional' requirement of probable cause which that Rule implements. . . . The principles an-

---

[1] Apparently, however, there was no evidence seized pursuant to the search warrant. Record 29a, 31a.

[2] The Court there held the warrant inadequate.

nounced in Giordenello derived, therefore, from the Fourth Amendment, and not from our supervisory power." *Aguilar v. Texas,* 378 U.S. 108 (1964) (Ftn. 3 at 112). See also *Beck v. Ohio,* 379 U.S. 89 (1964) (Ftn. 5 at 96).

Since arrest warrants in state court criminal trials must meet the constitutional standards established by the Supreme Court, it is necessary to examine the warrant in the instant case to test its sufficiency, and when placed against the relevant federal and state cases, this warrant is inadequate. In *Giordenello,* the Supreme Court outlined the theory underlying the probable cause requirement: "The protection afforded . . . is that the inferences from the facts which lead to the complaint '. . . be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14. The purpose of the complaint, then, is to enable the appropriate magistrate, here a Commissioner, to determine whether the 'probable cause' required to support a warrant exists. The Commissioner must judge for himself the persuasiveness of the *facts* relied on by a complaining officer to show probable cause. *He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime."* (at 486) (Emphasis added.) In *Nathanson v. United States,* 290 U.S. 41 (1933), a warrant was issued on the sworn allegation that the affiant "has cause to suspect and does believe" that certain merchandise was in a specified location. The Court noted that the affidavit was "upon a mere affirmation of suspicion and belief *without any statement of adequate supporting facts." id.,* at 46 (Emphasis added.), and then stated: "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable

cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough." *Id.*, at 47. In *Aguilar v. Texas, supra,* an affidavit reciting that: " 'Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.' " (at 109) was held insufficient. The mere conclusion that Aguilar possessed narcotics was not even that of the affiant himself, it was the conclusion of the unidentified informant. The affidavit not only contained no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein, it did not even contain an affirmative allegation that the affiant's unidentified source spoke with personal knowledge. The magistrate in *Aguilar* could not, therefore, judge for himself the persuasiveness of the facts relied on to show probable cause. He must necessarily have accepted, without question, the informant's belief or mere conclusion.

So it is in the instant case. As stated by President Judge ERVIN in *Commonwealth v. Smyser,* 205 Pa. Superior Ct. 599, 211 A. 2d 59 (1965), "The only way in which the magistrate could issue a warrant on such an affidavit is by accepting the affiant's conclusions and 'rubber-stamping' a warrant." (at 605). Here, there were no facts sworn to from which he might make his own separate, impartial determination as to whether or not probable cause existed.

Among the several state cases, the one most clearly applicable is the *Smyser* case, *supra.* In that case our Court held that a complaint averring a belief by deponent, on the basis of an investigation by an unnamed investigator, that defendant was concealing narcotics,

etc., in his apartment was insufficient because it provided no basis for an independent magisterial determination. On the other hand, *Commonwealth v. Ametrane*, 205 Pa. Superior Ct. 567, 210 A. 2d 902 (1965), *aff'd*, 422 Pa. 83, 221 A. 2d 296 (1966), is clearly distinguishable, for in that case sufficient facts were included in the complaints to permit a magistrate to find probable cause independently.[3] In *Commonwealth v. Alvarez*, 208 Pa. Superior Ct. 371, 222 A. 2d 406 (1966), where "probable cause" was based on "Very Reliable Information 100% In The Past, Surveilance [sic] Conducted 6-2-64, 5-31-64," the warrant was held to be inadequate.[4]

---

[3] The relevant portion reads: "Personal knowledge, that County Detectives were assigned to investigate the original complaint; that the undisclosed agent reported the placing of horse bets and that your affiant has personally observed this location for some time and from their reports and my personal knowledge and experience in such activities the original complaint has been corroborated." (at 571)

[4] But see *Commonwealth v. Palladino*, 209 Pa. Superior Ct. 257, 226 A. 2d 201 (1967) (per curiam). However, this case is distinguished from *Alvarez* because the surveillance was specifically that of the affiant. In the instant case the exact circumstances of the surveillance mentioned in the complaint are unclear, but it is certainly not that of the officer who obtained the warrants (Record 43a, 49a), and ". . . when the constitutional validity of [an] arrest [is] challenged, it [is] incumbent upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said, and why the officer thought the information was credible." *Beck v. Ohio*, 379 U.S. 89, 97 (1964).

If the surveillance was that of the informant, the statement as to its mention is superfluous. On the other hand, if the surveillance was not that of the informant, but that of an officer other than the arresting officer, the warrant would still be defective, not because the information was based on hearsay, but because the magistrate would have had no independent opportunity to evaluate the information, be it hearsay or otherwise. Indeed, the Supreme Court anticipated such circumstances in *Aguilar*, where it stated that to approve the warrants there, based on in-

The Commonwealth next contends that the arrest was valid even without a warrant. This contention seems to be based on either or both of the following grounds: first, that probable cause existed to justify an arrest without a warrant, and second, that the Act of March 31, 1860, P. L. 382, §60, 18 P.S. §1445[5] permits arrest in such an instance, with or without a warrant.

The first contention must fail. "Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed." *Wong Sun v. United States,* 371 U.S. 471 (1963) (at 479-480). "To hold that an officer may act in his own, unchecked discretion upon information too vague and from too untested a source to permit a judicial officer to accept it as probable cause for an arrest warrant would subvert [the fundamental policy of the Fourth and Fourteenth Amendments]." *Id.,* at 482. So that where a warrant is held defective it fol-

---

formation received from a reliable source, would have created an opportunity for an undesirable circumvention of the *Nathanson* and *Giordenello* rule, for a police officer who arrived at the suspicion or belief that a crime (such as possession of narcotics) was being committed could not himself obtain a warrant, but he could convey this conclusion to another police officer, who could then receive the warrant by swearing that he had "received reliable information from a credible person" that the crime was being committed. *Aguilar v. Texas,* ftn. 4 at 114.

5 "It shall and may be lawful for any sheriff, constable or other officer of justice, with or without warrant, to seize upon, secure and remove any device or machine of any kind, character or description whatsoever, used and employed for the purposes of unlawful gaming as aforesaid, and to arrest, with or without warrant, any person, setting up the same."

30

lows, a fortiori, the same information cannot be held sufficient to constitute a valid arrest without a warrant.

As to the Commonwealth's second contention, it also must fail. In *Commonwealth v. Patti,* 205 Pa. Superior Ct. 379, 209 A. 2d 17 (1965), this Court held the statute to be in rem, permitting the seizure and destruction of gambling equipment, which is subject to seizure with or without a search warrant. But, *Aguilar* and other cases "would prevent the use of such property as evidence in a criminal prosecution if its seizure did not meet the required standard." *Id.,* at 384.

Judgment reversed.