Dissenting Opinion by
Hoffman, J.:
At approximately 4:30 a.m. on October 13, 1966, the police received a call from an anonymous person who stated that there was a stolen car, with stolen articles in it, parked at 7300 Kelly Street, Pittsburgh, Pennsylvania. Police were dispatched to the scene and found the car described but no stolen articles. A check revealed that the car was indeed stolen, and it was returned to its rightful owner shortly thereafter. The police then received a second call, allegedly from the same person who had called earlier. The caller said that some stolen television sets were being taken into a third floor apartment at 7300 Kelly St. The police obtained a warrant and went to that address. The officers found several doors on the third floor, but knocked on the door from which light was showing. They produced the warrant and asked appellant’s wife if they could search the premises. She consented. In *276 a storage room in the apartment, the police uncovered a number of television sets and appliances.
Appellant was indicted on a bill charging burglary, larceny, and receiving stolen goods. Prior to trial, counsel for appellant moved to suppress the evidence seized as a result of the search of appellant’s apartment on the ground that the warrant was constitutionally infirm. The motion was denied and the evidence was used against appellant at trial. After the jury found him guilty, appellant renewed his objection to the use of the evidence in a motion for new trial. The motion was denied and this appeal followed.
The sole question raised in this appeal is whether the search warrant was obtained with probable cause, and whether the warrant sufficiently described the area to be searched.[1] Aguilar v. Texas, 378 U.S. 108 (1964).
Aguilar requires that underlying circumstances describing the reliability of an unidentified informer be part of the complaining affidavit to obtain a search warrant. Absent such information, the United States Supreme Court has stated that it is impossible for a magistrate to make an independent evaluation of the reliability of the information. The policy reasons for this are set forth in the writer’s dissent in Commonwealth v. Wright, 212 Pa. Superior Ct. 259, 243 A. 2d 213 (1968).
In the instant case, there were no supportive facts concerning the informer’s reliability. The affiant, a police inspector, testified that he did not know the informer’s name, had never talked to her, and had never received any information from that person before. The affiant testified further as follows:
“Q. On what did you base this decision that this was reliable information?
*277 “A. Well, here we received a call 4 :31 in the morning. A woman describes a car parked at a certain location. The officer arrives one minute later, the car is still there as described. The same woman calls again.” The affiant also stated that he could not be sure that the same woman called the second time because he personally did not take the calls; in fact, two different officers received the calls.
The Commonwealth contends that even though there was no personal observation by the affiant or the police and that even though the informer was unknown to the police, there was probable cause for issuance of the warrant. They contend that since the car found by the police at 7300 Kelly St., as a result of the informer’s first call, turned out to be stolen, since burglaries had occurred that night and some televisions had been taken, and since an informer stated in a second call that televisions were being taken into a building, there was sufficient probable cause for the issuance of a warrant.
I cannot agree with the Commonwealth and would find that the above facts and circumstances fall short of the standards propounded by Aguilar v. Texas, supra, and followed in our Commonwealth. See, e.g., Commonwealth v. Bondi, 211 Pa. Superior Ct. 23, 234 A. 2d 191 (1967). When a warrant is being issued solely upon the hearsay of an informant, as here, the magistrate must be informed of facts which vouch for the reliability and trustworthiness of the information.
There was nothing of record in this case to substantiate the informer’s reliability or that • of her information. The information initially supplied to the police by the first call was not wholly correct because the police were told that televisions or other articles would be in the stolen car, but none were ever found. The only information received from the second call was *278 a bald assertion that some television sets were stolen and being carried into an apartment building. The informer never told the police how she knew of this fact; all her call did was plant a seed of suspicion in the minds of the police.
Warrants cannot be issued on mere suspicion, especially when the information is from an informer who the police do not know and with whom they have never dealt. Some underlying circumstances must be set forth to establish the basis for believing the informer.
If our courts were permitted to rubber-stamp warrants that are issued on such a paucity of facts, we would be in derogation of our duty to uphold the Fourth Amendment and the right to be searched only upon probable cause. To affirm a conviction based on a search conducted on the facts of this case is to permit future searches based upon any “hot-tip” or “crank-call” offered to the police. I would, therefore, hold that since there are no underlying circumstances stated in the affidavit to support the reliability of the informer in this case, the standards of Aguilar v. Texas, supra, have not been met.
Appellant also contends that the warrant was infirm because it did not specifically describe the premises to be searched. The Commonwealth admits that the warrant was for the search of the entire third floor of 7300 Kelly Street. The officer executing the search testified that he saw several doors on the third floor, but only one had light showing from it. He said that he knocked at that door, and as a result of a search of that apartment, found several televisions. He further stated that if he had not found anything in that apartment, he would have searched all the other apartments on the third floor of that building.
*279 The Commonwealth contends that the search was proper because the police did not know at the time the warrant was secured that there was more than one apartment on the third floor. The record reveals that the reason for this belief is because the affiant obtained the warrant based solely upon the telephone call from the informer who said that the stolen items were being moved to a third floor apartment.
In certain circumstances, several living units in an apartment building may be searched. Two situations where such a search is permissible is when there is reasonable cause to believe that the entire unit is being used for an illegal purpose or where there is reasonable cause to believe that the premises are being used as a single unit. Commonwealth v. Copertino, 209 Pa. Superior Ct. 63, 224 A. 2d 228 (1966). In this case, the police obviously knew that the premises was a multiple dwelling rather than a single unit. The question, then, is whether there was reasonable cause to believe that the whole third floor was being used for unlawful purpose.[2]
In my opinion, there was no reasonable cause to believe that the entire third floor was being used for illegal purposes. The affiant had never personally investigated the building to determine whether there was more than one apartment on the third floor even though it was known that the building was a multiple dwelling unit. Moreover, the affiant did not have anyone on the police staff examine the premises to determine whether there was more than one apartment on the third floor. *280 The sole basis to support the affidavit and the warrant was the information supplied from the anonymous informer.
In light of the facts of this case, it would not have been unreasonable for the affiant or a person on his staff to determine if there was more than one apart* ment on the third floor. The circumstances here were not so exigent as to require an immediate search. Even more crucial is that if more than one apartment were found to be on the third floor, there still would be no probable cause to search each one. The information supplied by the caller provided no more than suspicion that a crime had been committed. The standards of Aguilar and Gopertino require more supportive facts than the conelusory hearsay accepted herein to support a search of the third floor of 7300 Kelly Street.
In summary, I would hold that there was no probable cause for the issuance of the warrant, and that the description of the premises in the warrant did not meet federal and state standards. Accordingly, I would hold that the evidence used against appellant should have been suppressed, and, therefore, I would vacate the judgment of the lower court and award appellant a new trial.

 The affidavit to obtain the warrant and the warrant are unavailable, but the record discloses the content of these documents.

 The instant case differs from Commonwealth v. Copertino, supra. In Copertino, the issue was whether there was reasonable cause to believe that the entire dwelling was being used for illegal purposes. The Court correctly concluded that there was sufficient evidence known to the police to indicate a multiple dwelling, and the warrant, having been issued for the entire dwelling, was therefore invalid.