411 A.2d 776

**COMMONWEALTH of Pennsylvania**

v.

**Stephen MOYER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1978.

Filed Oct. 12, 1979.

Anthony J. Urban, Assistant Public Defender, Pottsville, for appellant.

Charles M. Miller, Assistant District Attorney, Frackville, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CER-CONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, President Judge:

On July 30, 1976, pursuant to a warrant, appellant's motel room was searched and he was arrested and charged with several violations of the Controlled Substance, Drug, Device and Cosmetic Act.[1]  Following a jury trial, appellant was found guilty of violating Sections 13(a)(16) and 13(a)(31) of the aforesaid Act.  The sole issue raised by this direct appeal is whether the lower court erred in denying appellant's motion to suppress evidence seized during the search of his motel room.[2]

Appellant contends that the information set forth in the affidavit in support of the search warrant was insufficient to establish probable cause.  More specifically, it is asserted that the affidavit was constitutionally deficient in that it failed to inform the issuing authority "of some of the

1. Act of April 14, 1972, P.L. 233, No. 64, 35 P.S. § 780–101 et seq. (1977).

2. Among other things, the search yielded approximately one-half pound of marijuana and two grams of hashish.

underlying circumstances from which the [affiant] concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his information 'reliable' " (citation and footnote omitted). *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). See also *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968); *Commonwealth v. Matthews,* 446 Pa. 65, 285 A.2d 510 (1971); *Commonwealth v. Soychak,* 221 Pa.Super. 458, 289 A.2d 119 (1972). The affidavit in question, which was applied for and obtained on July 29, 1974, recited the following:

> "That prior to the above date writer received confidential information which was true and reliable that the subject Steven MOYER was dealing and doing drugs and that he had an involvement with the Minersville Boro Police as to drugs. That on 28 Jul 76 Officer Joseph MURTIN received confidential information from a reliable true and correct source that the subject was partying and involved in drugs up at Rm # 2, of the Pottsville Motor Inn and that he had a drug party the night before. MURTIN also had information that MOYER was dealing in hash and marijuana. That on 29 Jul 76 writer received information from an informant that MOYER had a party at his room ( # 2 of the Pottsville Motor Inn, Pottsville, Pa.) between 10 PM and midnight of 27 Jul 76 where at least 2 cars full of persons were there including some young girls. On 29 Jul 76 an informant indicated that MOYER was dealing out of this room and that he was to get some more drugs in to deal with. That on 29 Jul 76 informant furnished the writer with a small amount of marijuana which was obtained from MOYER'S room and that the informant observed other vegetable matter, similar to that furnished to affiant in the room. That between 5:45 PM and 6:00 P.M. 29 Jul 76, MOYER had 3 persons come to his room with something and then leave. That the writer received information that he was to be holding drugs later on 29 Jul 76. That the above information is to be true correct and reliable and honest."

The first component of the *Aguilar-Spinelli* probable cause equation is satisfied where the affidavit describes, among other things, the manner in which the informant gathered his information. *Commonwealth v. Soychak, supra; Commonwealth v. Samuels,* 235 Pa.Super. 192, 340 A.2d 880 (1975). Instantly, the second informant referred to in the affidavit furnished the affiant with a small amount of marijuana that he had obtained from appellant; and, in addition, advised the affiant that he had observed similar contraband in appellant's room. From this the issuing authority would be clearly justified in concluding that this information, if worthy of belief, was sufficient to establish probable cause to search appellant's room.

The crux of this case, however, is whether the second prong of the *Aguilar-Spinelli* test has been met. In other words, was the issuing authority furnished with sufficient information to make an independent determination that the informant was either credible or giving reliable information. While the question is admittedly close, we believe the balance tips in favor of the magistrate's decision to authorize the search.

In reviewing issues of this nature we are guided by the principles of *United States v. Ventresca,* 380 U.S. 102, 108–109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965):

"[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and course in a commonsense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

\*     \*     \*     \*     \*     \*

"Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

The seminal decision on what type of information will justify a magistrate in concluding that a substantial basis exists for crediting an informant's report is *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Based upon *Harris* this Court has, on several occasions, identified four factors to be considered in this regard:

"(1) Did the informant give prior reliable information?

(2) Was the informant's story corroborated by any other source?

(3) Were the informant's statements a declaration against interest?

(4) Does the defendant's reputation support the informant's tips?"

*Commonwealth v. Ambers,* 225 Pa.Super. 381, 386, 310 A.2d 347, 350 (1973); *Commonwealth v. Reisinger,* 252 Pa. Super. 1, 380 A.2d 1250 (1977); *Commonwealth v. Kaschik,* 235 Pa.Super. 388, 344 A.2d 519 (1975); *Commonwealth v. Falk,* 221 Pa.Super. 43, 290 A.2d 125 (1972). Every factor need not be present before the warrant may issue. *Commonwealth v. Herron,* 243 Pa.Super. 319, 365 A.2d 871 (1976); *Commonwealth v. Barrett,* 233 Pa.Super. 523, 335 A.2d 476 (1975). In fact, an informant's declaration against penal interest may by itself provide a substantial basis for crediting his hearsay report. *Commonwealth v. Matthews,* 446 Pa. 65, 285 A.2d 510 (1971).

In the matter before us, we find ourselves in agreement with the lower court's holding that the reliability of the second informant was established by his incriminating admission of having obtained marijuana from appellant. See *Commonwealth v. Reisinger,* supra; *Commonwealth. v. Rose,* 211 Pa.Super. 295, 235 A.2d 462 (1967). "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these state-

ments. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." *United States v. Harris,* 403 U.S. at 583–584, 91 S.Ct. at 2082. In addition we do not feel that the fact that the informant remained nameless in the affidavit is especially important. *United States v. Harris, supra.* The police were obviously aware of his identity since he furnished them with a small amount of marijuana which he claimed to have obtained from appellant.[3] Indeed, the very fact that the informant turned over the controlled substance to the police may be viewed as "corroborative evidence of his reliability." *State v. Hayward,* 18 Or.App. 128, 523 P.2d 1278, 1280 (1974).

■ Lastly, although the information supplied by the first informant to Officer Martin who in turn conveyed it to the affiant was "double-hearsay," it did correspond in certain particulars with the principal informant's information and, therefore, was entitled to some weight for the purpose of assessing the principal informant's reliability. Moreover, the affiant's statement that he was aware (albeit not personally) of appellant's drug involvement with the Minersville Borough Police is some additional indication of the chief informant's reliability. *Commonwealth v. Barrett, supra.*

■ In sum, viewing all the information within the "four corners" of the affidavit, we are of the opinion that the principal informant's reliability was sufficiently established.

Judgment of sentence affirmed.

3. Under the facts and circumstances of this case, had the informant's tip been false, he would have been susceptible to punishment under the Crimes Code, 18 Pa.C.S. § 4906 (1978) which provides:

"(a) Falsely incriminating another.—A person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree."

400

HOFFMAN, J., files a dissenting statement in which SPAETH, J., joins.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

HOFFMAN, Judge, dissenting:

The information set forth in the affidavit in the instant case was insufficient to support an independent conclusion by the issuing authority that the informant was reliable. *Commonwealth v. Falk*, 221 Pa.Super. 43, 290 A.2d 125 (1972). Accordingly, I dissent.

SPAETH, J., joins in this dissenting statement.